UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CRESTBROOK INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5:24-CV-096-CHB |
| v. | ) ) | **MEMORANDUM OPINION** |
| RODNEY HATFIELD, et al., | ) ) | **AND ORDER** |
| Defendants. | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on two motions. First, the Motion to Dismiss Complaint

for Declaratory Judgment or, in the Alternative, Motion for Extension of Time to File Answer

and Preserve Defenses ("Motion to Dismiss") filed by Defendants Rodney Hatfield and Capital

Holdings 181, LLC (collectively, "the Hatfield Defendants"), [R. 8], in which these defendants

ask the Court to decline jurisdiction over the Amended Complaint for declaratory relief, [R. 17],[1]

filed by Plaintiff Crestbrook Insurance Company ("Crestbrook"). Crestbrook responded, [R. 10],

and the Hatfield Defendants replied. [R. 12]; *see also* [R. 21 (Supplemental Reply)].[2] Thereafter,

Defendant Jane Doe[3] was served, [R. 13], and filed a Motion to Adopt and Join the Hatfield

---

[1] The operative complaint in this case, the Amended Complaint, was filed on July 29, 2024, after the filing of the pending motions. However, the complaint was amended only to change the name of one defendant to the pseudonym "Jane Doe," pursuant to this Court's Protective Order. [R. 16]. There are no substantive changes between the original Complaint, [R. 1], and the Amended Complaint, [R. 17], and the Court understands that the arguments in the Motion to Dismiss apply with equal force to the Amended Complaint.

[2] Defendants' Supplemental Reply notified the Court of a Second Amended Complaint filed in the state court action. [R. 21]. Because the Court's analysis is not dependent on the new allegations and claims in the Second Amended Complaint, the Court does not believe a sur-reply from Crestbrook is necessary.

[3] The Court refers to this defendant by her pseudonym "Jane Doe," as reflected in the Court's Protective Order. [R. 16].

Defendant's Motion to Dismiss. [R. 14]. Crestbrook responded. [R. 18]. The Hatfield Defendants did not file a response, and no replies were filed. Both motions are therefore ripe for review. For the reasons set forth below, the Court will grant Defendant Doe's Motion to Adopt and Join, [R. 14], grant the Motion to Dismiss, [R. 8], and dismiss this case without prejudice.

## I. BACKGROUND

On December 8, 2022, Ethan Hatfield, son of Defendant Rodney Hatfield, shot his girlfriend, Defendant Jane Doe, in the right eye before committing suicide. [R. 17, ¶ 15 (Amended Complaint)]; [R. 17-3, ¶¶ 37–40 (Amended State Court Complaint)]; [R. 21-2, p. 12, ¶¶ 40–43 (Second Amended State Court Complaint)]. Jane Doe survived but "sustained significant, life-long injuries . . . , both physical and emotional." [R. 17-3, ¶ 45]. The shooting took place at 4909 McAtee Lane in Fayette County, Kentucky, a residential property owned by Rodney Hatfield. [R. 17, ¶ 10]; [R. 17-3, ¶¶ 2, 37]; [R. 21-2, p. 2, ¶ 2, p. 12, ¶ 40]. The home is also the mailing address of Defendant Capital Holdings 181, LLC. [R. 17, ¶ 8].

On August 25, 2023, Jane Doe filed suit in Fayette Circuit Court. [R. 17, ¶ 14]. Shortly thereafter, on September 11, 2023, she filed an Amended Complaint, naming as defendants John Norman in his capacity as the administrator of the estate of Ethan Hatfield, Rodney Hatfield, and Capital Holdings 181, LLC. Against the estate, she asserts claims of assault, battery, intentional infliction of emotional distress, negligence/gross negligence, and negligence per se. [R. 17-3, ¶¶ 56–85]. She asserts a claim of negligence/gross negligence against Rodney Hatfield and Capital Holdings 181, LLC, and a claim of negligence per se against Rodney Hatfield only. *Id.* ¶¶ 86–106. She has since filed a Second Amended Complaint in the state court action, adding claims for "Negligent/Gross Negligent Storage and/or Maintenance of Firearms" and

"Negligent/Gross Negligent Entrustment" against Rodney Hatfield and Capital Holdings 181, LLC. [R. 21-1, pp. 20–25, ¶¶ 111–139].

As for her claims against the Hatfield Defendants, Jane Doe alleges that Rodney Hatfield was aware of Ethan Hatfield's criminal history and behavior, including his past criminal charges, his inability to possess a firearm as a result of those felony convictions, his repeated probation violations, his history of substance abuse, and his propensity for violence. *Id.* ¶¶ 14–26. "Despite all of this knowledge," Jane Doe alleges, "Rod Hatfield allowed Ethan Hatfield to maintain possession of a gun Rod Hatfield gave him, which Ethan Hatfield ultimately used to shoot [Jane Doe], as well as other firearms," and he also permitted Ethan Hatfield to drink alcohol and use drugs at the 4904 McAtee Lane residence. *Id.* ¶ 26.  He also allegedly provided Ethan Hatfield with a key to a room at the 4909 McAtee Lane property where firearms and ammunition were stored. *Id.* ¶ 28.

On April 5, 2024, Crestbrook filed its complaint for declaratory relief in this Court. [R. 1]. At the time of the shooting, Crestbrook provided insurance coverage to Rodney Hatfield under a homeowner's insurance policy, Policy No. HO00093464-07 (hereafter, "Homeowner's Policy"), and a Personal Excess Liability Policy, Policy No. PX00093467-07. *Id.* ¶ 11; [R. 17-1 (Homeowner's Policy)]; [R. 17-2 (Personal Excess Liability Policy)]. On both policies, Rodney Hatfield is the named insured, and Capital Holdings 181, LLC is listed as an additional insured on the Personal Excess Liability Policy. *See, e.g.*, [R. 17, ¶ 12]; [R. 17-1, p. 2]; [R. 17-2, pp. 2, 4].[4]

Relevant here, the Homeowner's Policy provided coverage under "Coverage E—Personal Liability." [R. 17-1, p. 41]. Under this "Personal Liability" coverage, Crestbrook "will provide a

---

[4] To the extent the page numbers listed on a filing differ from the page number assigned by the Court's electronic docketing system, the Court cites to the number assigned by the electronic docketing system.

defense" and "will pay damages an Insured is legally obligated to pay due to an Occurrence resulting from . . . negligent personal acts or negligence arising out of the ownership, maintenance, or use of real or personal property at an Insured Location." *Id.* An "occurrence" is "an accident, including continuous or repeated exposure to the same general condition," which results in bodily injury, property damage, or personal injury. *Id.* at 40.

The Homeowner's Policy is subject to certain exclusions. For example, under the "Liability Exclusions" section, Section II(1)(a), the policy explains that the "Personal Liability" provision does not apply to bodily injury, property damage, or personal injury "caused intentionally by or at the direction of an insured, including willful acts the result of which the Insured knows or ought to know is likely to follow from the Insured's conduct." [R. 17-1, p. 43]. The Court (and the parties) refer to this as the Intentional Acts Exclusion. *See, e.g.*, [R. 10, p. 3].[5] Section II(1)(b) similarly excludes coverage for bodily injury, property damage, or personal injury "caused by or resulting from an act or omission which is criminal in nature and committed by an insured." [R. 17-1, p. 43]. This will be referred to as the Criminal Acts Exclusion. *See, e.g.*, [R. 10, p. 3].

Generally, if an occurrence is covered by the Homeowner's Policy, the Personal Excess Liability Policy will cover damages in excess of the Homeowner's Policy limits. [R. 17-2, pp. 28–29]. The Personal Excess Liability Policy may also cover claims not otherwise covered by the Homeowner's Policy. *Id.* However, like the Homeowner's Policy, the Personal Excess Liability Policy is subject to certain exclusions. For example, the policy explains that "this

---

[5] To be clear, the parties fail to cite to specific provisions—or even page numbers—of the policies and refer only generally to the exclusions. Nevertheless, the Court has reviewed the policies and, based on the briefing and other documents in the record, *see, e.g.*, [R. 8-9 (Reservation of Rights Letter)], the Court understands the above-cited provisions to be the ones at issue in this case.

insurance does not apply to liability, Bodily Injury, Property Damage, Personal Injury, Defense Costs or any other cost or expense arising out of . . . [a]ny criminal, willful, fraudulent, dishonest, intentional or malicious act or omission by any person." [R. 17-2, p. 34]. The policy further explains that Crestbrook "will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, Property Damage, or Bodily Injury." *Id.* The Personal Excess Liability Policy also does not cover personal injury resulting from "[w]ilful violation of a law by or with the consent of the Insured," among other things. *Id.* at 37.

Citing to these various provisions, Crestbrook explained via letter that "it appears there is no coverage for one or all of the claims" asserted in the state court suit. [R. 8-9, p. 6 (Reservation of Rights Letter)]. Nevertheless, Crestbrook agreed to provide a defense in the state court lawsuit under a reservation of rights. *Id.*

To resolve the coverage issue, Crestbrook filed this federal declaratory action on April 5, 2024. [R. 1]. Crestbrook asks the Court for a declaratory judgment "[d]eclaring that the allegations of the Complaint do not constitute an 'occurrence' under the Policies, and therefore there is no coverage under the Policies," and '[d]eclaring that Defendants' claims are excluded pursuant to the exclusions of the Policy." [R. 17, pp. 8–9].

On or about April 29, 2024, shortly after the initiation of this federal declaratory action, the Hatfield Defendants filed a Third-Party Complaint against Crestbrook in the state court action. [R. 8-5 (Third-Party Complaint)]. The Hatfield Defendants assert a claim for breach of contract and a claim under Kentucky's Unfair Claims Settlement Practices Act. *Id.* ¶¶ 7–9. In their briefing, they refer to the latter as a "bad faith" claim. [R. 12, p. 6].

On May 10, 2024, the Hatfield Defendants filed their Motion to Dismiss in this Court, asking the Court to decline jurisdiction under the Declaratory Judgment Act.[6] [R. 8]; [R. 8-1 (Memorandum in Support)]. In doing so, the defendants cite and discuss the five factors articulated by the Sixth Circuit in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). [R. 8-1, pp. 5–10]. They conclude that four of the five factors weigh in favor of declining jurisdiction, and therefore ask the Court to dismiss this action or, alternatively, allow for additional time to file an answer. *Id.* at 10. Crestbrook filed a response, asking the Court to exercise jurisdiction, and the Hatfield Defendants replied. [R. 10 (Response)]; [R. 12 (Reply)].

Jane Doe was then served on June 17, 2024. [R. 13]. Soon after, she filed her Motion to Adopt and Join the Hatfield Defendants' Motion to Dismiss. [R. 14]. In her one-paragraph motion, she asserts that "the Court may properly decline to exercise jurisdiction over an action by an insurance company seeking declaratory judgment as to an underlying state court lawsuit." *Id.* Like the Hatfield Defendants, she asks the Court to decline jurisdiction and dismiss this action, and she incorporates by reference the arguments made in the Hatfield Defendants' Motion to Dismiss. *Id.* Crestbrook responded and does not appear to object to Jane Doe's request to adopt and join the Motion to Dismiss. [R. 18]. Instead, Crestbrook reasserts the arguments made in its response to that motion and again asks the Court to accept jurisdiction. *Id.* The Hatfield Defendants did not file a response to Jane Doe's motion.

---

[6] The Amended Complaint cites to the Declaratory Judgment Act, but also alleges diversity jurisdiction. [R. 17, ¶¶ 1, 3]. However, "federal jurisdiction under [the Declaratory Judgment Act] is not the same as diversity or federal question jurisdiction because the statute 'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, No. 12-39-ART, 2012 WL 3067579 (E.D. Ky. July 27, 2012) (quoting *Wilton*, 515 U.S. at 286). Thus, even where diversity jurisdiction exists, the Court may still decline to exercise discretionary jurisdiction under the Declaratory Judgment Act.

Because no party has objected to Jane Doe's request to adopt and join the Hatfield Defendants' Motion to Dismiss, the Court will grant that request. The Court next turns to the Motion to Dismiss, [R. 8], which, as noted above, has been fully briefed and is ripe for review. [R. 10]; [R. 12].

## II. ANALYSIS

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As the use of the permissive "may" suggests, "a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so." *Grange Mut. Ins. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942)). Rather, "this act '[c]onfers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see also Cardinal Health, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 801 (6th Cir. 2022) ("We afford district courts 'substantial discretion to exercise jurisdiction in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp.'" (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008))).

However, "[d]istrict courts must exercise this discretion cautiously." *Id.*; *see also W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (explaining that Court's discretion under the Declaratory Judgment Act "must not be unguided"); *but see Cardinal Health*, 29 F.4th at 801 (explaining that the Sixth Circuit is reluctant to reverse a lower court's decision to abstain

under *Grand Trunk*, and noting that it has "generally only done so when the district court did not engage in the *Grand Trunk* analysis at all" (citations omitted)). As this Court previously explained, "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Grange*, 565 F. Supp. 2d at 785 (internal citations omitted). The Sixth Circuit has similarly "cautioned district courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)) (internal quotation marks omitted). Nevertheless, "no per se rule exists against exercising jurisdiction" under the Declaratory Judgment Act. *Id.* (citing *Bituminous*, 373 F.3d at 812–13).

The Sixth Circuit has identified two general principles to determine whether it would be appropriate to accept jurisdiction over a declaratory judgment action:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted). With these general principles in mind, the Sixth Circuit articulated five factors to guide district courts as they consider whether to exercise jurisdiction under the Declaratory Judgment Act:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted). The Court considers each of the *Grand Trunk* factors in turn.

### A. Factor One

The first *Grand Trunk* factor asks "whether the declaratory action would settle the controversy." *Id.* In the Sixth Circuit, "[t]wo lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Flowers*, 513 F.3d at 555. The key distinction between these two lines of precedent is whether the declaratory action must settle the controversy in the state court action, or whether it need only settle the insurance coverage dispute. Some cases hold that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citations omitted). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citations omitted).

The Sixth Circuit has examined the reasoning for this split and has "suggested that the contrary results found in these cases might be explained by their different factual scenarios." *White Pine Ins. Co. v. McIntosh*, 5:21-238-KKC, 2022 WL 2512771, *5 (E.D. Ky. July 6, 2022) (citing *Flowers*, 513 F.3d at 555); *see also Flowers*, 513 F.3d at 555–56 (discussing the two lines of precedent). For example, in cases involving "fact-based question[s] of state law" already before the state court, the Sixth Circuit has found that declaratory relief in the federal court would not settle the controversy. *See Flowers*, 513 F.3d at 555 (discussing *Bituminous*);

- 9 -

*Bituminous*, 373 F.3d at 814–13 (explaining that this factor weighed against exercising jurisdiction where key factual issues would be resolved in two independent state court proceedings); *Frankenmuth Mutual Ins. Co. v. Balis Campbell, Inc.*, 510 F.Supp.3d 482, 491–92 (E.D. Ky. 2020) (finding this factor weighed in favor of exercising jurisdiction where only the duty to defend was at issue, meaning that coverage issue could be resolved without further development of the facts); *General Star Nat'l Ins. Co. v. Terry Flinchum CPA, Inc.*, 6:22-CV-189-CHB, 2023 WL 3956150, *13 (June 12, 2023) (finding that the coverage issues could be resolved by looking only to the allegations in the complaint, meaning no relevant facts needed to be developed in state court and this factor weighed in favor of exercising jurisdiction); *Nautilus Ins. Co. v. KC Diamond Sports Studio, LLC*, No. 21-63-DLB, 2022 WL 2911656 (E.D. Ky. July 22, 2022) (explaining that factual determinations regarding a party's bodily injuries and damages, which were before the state court, were necessary to determining whether the insurance company owed a duty to indemnify).

The Sixth Circuit has also found that this first factor weighs against exercising jurisdiction where a declaratory judgment would not be binding on all relevant parties, such as when a state-court party is not joined in the federal action. *See, e.g.*, *id.* (discussing *Bituminous*); *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) (noting that certain parties who may be affected by the Court's declaratory judgment were not joined in the federal action and therefore concluding that the first two factors weighed against exercising jurisdiction); *Bituminous*, 373 F.3d at 814 (finding that a declaratory judgment would *not* settle the controversy because a relevant party in the state court proceeding was not made party to the federal action).

Thus, this first factor presents a case-specific inquiry. *See, e.g.*, *White Pine Ins. Co.*, 2022 WL 2512771, at *5. Some common factual considerations include:

> whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the state action would be bound by the federal court action to which they were not a part, whether the issue was one being developed by state court discovery, and whether the scope of coverage or obligation to defend was before the state court.

*Id.* (quoting *Grange*, 565 F. Supp. 2d at 786); *see also Flowers*, 513 F.3d at 555–56 (discussing factual differences between the two lines of cases).

In the present case, there is no dispute that the parties are the same in both the state and federal proceeding, with the exception of Ethan Hatfield's estate, which is a party to the state court proceeding but not this declaratory action. However, Ethan Hatfield is not a covered party under the policies, and his estate need not be involved in these coverage issues or bound by any declaratory judgment in this case. As such, the relevant parties in the state court action would be bound by a declaratory judgment from this Court. Thus, at least some of the factual considerations cited above weigh in favor of exercising jurisdiction.

Nevertheless, the defendants argue that the requested declaratory judgment will not settle the ultimately controversy in the state court matter. [R. 8-1, pp. 5–6]. They note that the issue in this federal declaratory action "pertains to the existence of coverage," and "[t]he state court claims against [the Hatfield Defendants] would continue regardless of whether there is insurance coverage." *Id.* at 5. Thus, the Court understands that the defendants rely on the line of cases suggesting that this first factor weighs against exercising jurisdiction where "fact-based question[s] of state law" are already pending in the state court matter. *See, e.g.*, *Flowers*, 513 F.3d at 555 (discussing *Bituminous*). More specifically, the defendants rely on the fact that the

coverage issue—i.e., whether coverage exists under the policies—is presently pending before the state court via the third-party complaint. [R. 8-1, p. 5].

Crestbrook, on the other hand, insists that the determination of its duties under the policies "will involve interpretation of undisputed facts, policy language, and Kentucky law." [R. 10, p. 5]. Because the coverage issues involve undisputed factual issues and a straightforward application of settled state law, Crestbrook argues, "declaratory relief in federal court will resolve the coverage issue." *Id.* at 6. It appears, then, that Crestbrook asks the Court to follow the first line of cases cited above and find that this declaratory action will resolve the coverage issue and therefore settle the controversy. *See generally Flowers*, 513 F.3d at 555 (discussing the two competing lines of cases).

However, Crestbrook's argument overlooks the fact that the issue of coverage is also pending before the state court. When the coverage issue is *not* before the state court, courts have often found that this factor weighs in favor of exercising jurisdiction. *See White Pine*, 2022 WL 2512771, at *7 (collecting cases). But in the present case, the coverage issue *is* being litigated in the state court, via the third-party complaint and the Hatfield Defendant's claims for breach of contract and bad faith. *See* [R. 8-5 (Third-Party Complaint)]. To establish their claim of bad faith under Kentucky's Unfair Claims Settlement Practices Act, the Hatfield Defendants must prove, among other things, that Crestbrook was obligated to pay the claim under the terms of the policies. *Martinez v. State Farm Mut. Auto. Ins. Co.*, 614 F. Supp. 3d 584, 591 (W.D. Ky. July 15, 2022) (quoting *Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 737–38 (Ky. 2016)); *see also Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (setting forth the elements of bad faith claim under the Kentucky statute). Thus, "[t]he issue of coverage is squarely before the state court because it is prerequisite to a bad faith claim against an insurer."

*White Pine Ins. Co.*, 2022 WL 2512771, at *8 (citation omitted).[7] As a result, the state court's resolution of the bad faith claim "necessarily requires a determination of coverage, and thus both 'courts ha[ve] to address the identical issue' of insurance coverage." *Id.* (quoting *Bituminous*, 373 F.3d at 813).

From this, one could argue that resolution of the coverage issue in this Court will necessarily resolve the coverage issue in the state court. True, if the Court rules in Crestbrook's favor and issues the requested declaratory judgment, that decision might resolve the state-court bad faith claim. However, "arguing that this favors jurisdiction only looks at one side of the coin." *Id.* (quoting *Montpelier US Ins. Co. v. Collins*, 11-141-ART, 2012 WL 588799, *3 (E.D. Ky. Feb. 22, 2012).  The other side of the coin would be a ruling *against* Crestbrook (i.e., a finding of coverage), which would require that the bad faith claim be further litigated in the state court suit. *See id.* Thus, whether this Court's ruling on the coverage issues would resolve the bad faith claims "is speculative at this point." *Id.* And as this Court has explained, "[a] declaratory judgment action that would settle the underlying state-court litigation only if the Court rules a certain way still poses an undue risk of forcing the parties to engage in fractured, piecemeal litigation and thus weighs against exercising jurisdiction." *Id.* (quoting *Collins*, 2012 WL 588799, at *8).

The Court understands Crestbrook's concerns about the timing of the third-party complaint. *See, e.g.*, [R. 10, pp. 5–6 ("Though the Defendants state that the issues presented in this matter are 'duplicated in state court,' that obfuscates that (sic) fact that the Defendants only presented the coverage issues to the Court after the filing of the present suit.")]. That third-party

---

[7] While the court in *White Pine* considered the requirements of a common law bad faith claim, a determination of coverage is also a prerequisite to a statutory bad faith claim under Kentucky's Unfair Claims Settlement Practices Act. *See, e.g.*, *Wittmer*, 864 S.W.2d at 890.

complaint was filed by the Hatfield Defendants on or about April 29, 2024, just over three weeks after this declaratory action was filed and less than two weeks before the filing of their Motion to Dismiss. *See* [R. 1 (Complaint)]; [R. 8-5 (Third-Party Complaint)]; [R. 8 (Motion to Dismiss)]. But beyond the timing concerns, the Court has no reason to believe that the Hatfield Defendants filed their breach of contract and bad faith claims in an effort to influence this Court's decision to exercise or decline jurisdiction. Crestbrook has not provided any such evidence. And regardless of the Hatfield Defendants' motives in filing the third-party complaint, it nevertheless remains pending in state court, and those issues relating to coverage are squarely before that court.

Moreover, while the coverage issue may not involve novel or complex issues of state law, it does present factual questions that are also being decided in the state court matter. On this point, Crestbrook first argues that the duty to defend can be determined by examining the policies and the state court complaint, *without* resolving any factual disputes. [R. 10, p. 6]. True, "[f]actual findings are not necessary" to determine a duty to defend "because '[t]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merits of the action.'" *White Pine*, 2022 WL 2512771, at *6 (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)). Thus, to determine whether a duty to defend exists, the Court need only review the state court complaint and the policies and determine whether any allegation in that complaint might trigger coverage under the policies. *Id.* (citing *Cole's Place*, 936 F.3d at 399–400; *James Graham Brown*, 814 S.W.2d at 279). As a result, the Court would not have to make any factual determinations (or rely on the state court's factual determinations) to resolve this specific coverage issue; instead, the Court would look to the facts *as alleged* in the state court complaint to determine if the alleged conduct triggers coverage. *See Frankenmuth*, 510 F.Supp.3d at 491–

- 14 -

92 (discussing the duty to defend).

The duty to indemnify, however, "is 'separate and distinct' from the duty to defend." *White Pine*, 2022 WL 2512771, *7 (quoting *James Graham Brown*, 814 S.W.2d at 279). And unlike a duty-to-defend determination, the question of "whether an insurer has an obligation to indemnify is a question of law to be determined *after* the facts have been determined by a jury." *Id.* (citations omitted). Thus, to determine whether Crestbrook has a duty to indemnify the Hatfield Defendants in the state court matter, "any disputed material facts must be resolved." *Id.*

But, Crestbrook argues, this Court can determine the duty to indemnify by "rely[ing] on undisputed facts without having to resolve any factual disputes." [R. 10, p. 6]. Crestbrook expends no effort to identify or discuss any undisputed facts, however. And it appears that various factual disputes relating to coverage exist, including whether Jane Doe's injuries were caused intentionally or at the direction of Rodney Hatfield, an issue which in turn requires the Court to determine whether Rodney Hatfield knew or should have known that Jane Doe's injuries were likely to result from Rodney Hatfield's conduct. *See* [R. 17-1, p. 43 (the Intentional Acts Exclusion)]. And to determine whether the Criminal Acts Exclusion applies, the Court must determine Rodney Hatfield's relevant acts or omissions and whether they were criminal in nature. *See id.* Similar exclusion in the Personal Excess Liability Policy would require the Court to determine whether Jane Doe's injuries resulted from "[a]ny criminal, willful, fraudulent, dishonest, intentional or malicious act or omission by any person," and whether her injuries were caused by "acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, Property Damage, or Bodily Injury." [R. 17-2, p. 34]. Thus, while the issue of Crestbrook's duty to *defend* may not involve any fact-based questions of state law, the issue of its duty to *indemnify* does. *See White Pine*, 2022 WL 2512771, at *7 (ruling

similarly).

The Court is also mindful that "competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible" counsel against exercising discretion. *Flowers*, 513 F.3d at 555; *see also Grange*, 565 F. Supp. 2d at 788–89 (acknowledging that a federal declaratory action would resolve the discrete question before the Court but recognizing that it would not "settle the ultimate controversy"). For this reason, and for those set forth above, the Court finds that the first *Grand Trunk* factor weighs against exercising jurisdiction.

### B. Factor Two

Factor two considers "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. This factor "is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557 (citing *Travelers*, 495 F.3d at 271–72). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* (citing *Bituminous*, 373 F.3d at 814; *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). As with the first factor, a split has developed among Sixth Circuit jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* (citations omitted). In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter." *Id.* It explained,

> The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance

indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Id.*

Thus, in *Flowers*, the Court found that the second factor supported the district court's exercise of jurisdiction, as it clarified the legal relations at issue in that case—"namely, the contractual duties of indemnification owed by [the insurance company] to the [declaratory defendant]." *Id.* The Court noted that, "[w]hile [the declaratory action] did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues," nor would it "confuse the state court's analysis of [the] liability issues." *Id.* In more recent decisions, the Sixth Circuit again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation. *See United Specialty Ins. Co. v. Cole's Place*, 936 F.3d 386, 398–99 (6th Cir. 2019); *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 Fed. App'x 431, 438 (6th Cir. 2019).

In their motion, the defendants acknowledge that "making a ruling [in this case] would resolve the issue between the parties." [R. 8-1, p. 6]. However, they argue, this same issue "is duplicated in state court," and as a result, "[t]he parties will have to engage in litigation regarding the same factual and causal arguments in both Federal and State court." *Id.* Because the parties would be forced to litigate on two fronts, the defendants argue that this factor weighs against accepting jurisdiction. *Id.* In response, Crestbrook argues that resolution of this coverage issue will not complicate or confuse the liability issues at play in the state court matter, so this factor weighs in favor of exercising jurisdiction. [R. 10, pp. 6–7].

The Court agrees that the requested declaratory judgment will resolve certain coverage

issues between Crestbrook and the Hatfield Defendants. More specifically, it will resolve the question of whether any coverage, for defense or indemnity, is available to these defendants under the policies, or whether such coverage is excluded by the Intentional Acts Exclusion or the Criminal Acts Exclusion. Resolution of these coverage issues will not resolve all of the issues in the state court matter, of course. However, while the requested declaratory judgment in this case will "not resolve the relative rights of all parties in the state-court litigation, it does determine whether the insurer must continue defending the insured party." *United Specialty*, 936 F.3d at 399. For these reasons, and under the Sixth Circuit's decision in *Flowers* and recent decisions like *United Specialty*, the Court finds this action will clarify the legal relations of the parties in this case.

However, the Court is mindful that "exercising jurisdiction would serve only a limited purpose in clarifying the legal relations at issue." *White Pine*, 2022 WL 2512771, at *9.[8] The Court also disagrees with Crestbrook's assertion that exercising jurisdiction will not complicate or confuse the state court issues. *See* [R. 10, pp. 6–7]. As noted above, if this Court exercises jurisdiction, it must then go on to decide the coverage issues which are at the heart of the Hatfield Defendant's breach of contract and bad faith claims. In doing so, the Court could also be forced to decide disputed facts relevant to the underlying tort claims in that state court lawsuit. As such, and giving the benefit of the doubt to Crestbrook on the issue, the Court finds that this second factor is, at best, neutral.

### C. Factor Three

Under the third *Grand Trunk* factor, the Court asks whether the declaratory judgment

---

[8] This Court previously found in Abundance Coal that the declaratory action would clarify the legal relationships among the parties, but it nevertheless found that this factor weighed in favor of dismissal, stressing that the declaratory judgment must "serve a truly 'useful purpose' by clarifying the legal relationships among the parties." No. 12-39-ART, 2012 WL 3067579 at *6 (citations omitted).

action "is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326. As to this factor, the Sixth Circuit has explained that "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Flowers*, 513 F.3d at 558).  However, plaintiffs who file their suits shortly before the corresponding state court action is filed, "and who seem to have done so for the purpose of acquiring a favorable forum," are subject to scrutiny under this factor. *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)) (internal quotation marks omitted).

Typically, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted). When no such evidence exists, courts often give the "benefit of the doubt" to the declaratory plaintiff and find that the third factor is neutral. *See, e.g.*, *Bituminous*, 373 F.3d at 814; *Cardinal Health*, 29 F.4th at 797 (acknowledging that some inconsistency in the way it has treated the third factor in the absence of evidence of procedural fencing, but finding no abuse of discretion where district court deemed the third factor neutral). In such cases, "this factor should be afforded little weight." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272); *see also United Specialty*, 936 F.3d at 399 (explaining that this factor "usually does not weigh heavily in the analysis").

In the present case, the defendants argue that there is no evidence in the record of procedural fencing. [R. 8-1, p. 6]. Nevertheless, they insist that the Court's exercise of jurisdiction in this case will create a race for res judicata, given the third-party complaint in state court and the overlapping factual and causal issues in these cases. *Id.* at 6–7. Still, the defendants ask only that the Court find this factor to be neutral. *Id.* at 7.  In response, Crestbrook notes that it

filed this federal action after the start of discovery in the underlying state court action, and it "was attempting to be economical in the timing of its declaratory action, by attempting to resolve the coverage issue early and without impeding or muddling the discovery efforts in the underlying litigation." [R. 10, p. 7].

The Court finds no evidence of procedural fencing in this action. This federal declaratory action was filed April 5, 2024, nearly seven months after Jane Doe filed her Amended Complaint in state court on September 11, 2023. *See* [R. 1]; [R. 17-3, ¶¶ 37–40 (Amended State Court Complaint)]; *see also Employers Mutual Casualty Co. v. Clifford*, No. 5:23-271-KKC, 2024 WL 2221445, *3 ("Courts 'generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court.'" (quoting *Cole's Place*, 936 F.3d at 399)). While Crestbrook was aware of the pending state court action and could have attempted to file for declaratory relief in the state court, it was not obligated to do so. *See Flowers*, 513 F.3d at 558 ("While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale the right to do precisely that, especially when the state court litigation has been ongoing for several years without resolving the issue."). And while defendants cite to the third-party complaint in the state court action, it was filed *after* the initiation of this federal lawsuit. *See* [R. 8-5 (Third-Party Complaint, filed August 29, 2024)]. There is no evidence that Crestbrook was aware of the defendants' intent to file the third-party complaint, nor is there any other evidence of a race to the courthouse. In the absence of such evidence, the Court will give the benefit of the doubt to Crestbrook that there was no improper motive behind its decision to seek declaratory relief in this Court. However, as noted above, "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759

Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272). Accordingly, this third factor is neutral, and the Court will afford it little weight.

### D. Factor Four

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. Like factors one and two, this factor focuses on the presence of novel or complicated state law or factual issues. *See, e.g.*, *United Specialty*, 936 F.3d at 400 ("For purposes of the fourth *Grand Trunk* factor, it is important simply to note that the question does not involve novel or complicated state-law or factual issues."); *Admiral Ins. Co. v. Fire-Dex, LLC*, 22-3992, 2023 WL 3963623, *3–4 (emphasizing that the coverage dispute turned on a novel issue of state law). On this point, the Supreme Court has warned that "a district court might be indulging in '[g]ratuitous interference'" if it permits a federal declaratory relief action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court." *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283). "However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Id.* at 560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)).

The Sixth Circuit has identified three subfactors to aid courts in considering this factor:

(1) whether the underlying factual issues are important to an informed resolution of the case;
(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th

Cir. 2000)); *see also United Specialty*, 936 F.3d at 396 (reciting the three subfactors). The Court addresses each subfactor in turn.

### i.  Subfactor 1

Under the first subfactor, the Court must consider "whether the underlying factual issues are important to an informed resolution of the case." *Bituminous*, 373 F.3d at 814 (citing *Roumph*, 211 F.3d at 968). As this Court has explained,

> [w]hen the liability issues central to the state court proceeding are distinct from those central to the federal court proceeding, federal jurisdiction is appropriate, but when "the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the Court should decline to exercise its jurisdiction.

*Grange*, 565 F. Supp. 2d at 789 (citing *Flowers*, 513 F.3d at 560). For example, in *Flowers*, the parties agreed that the issues raised in the federal declaratory action were distinct from those raised in the state court litigation. *Flowers*, 513 F.3d at 560. Because the issues were distinct, that subfactor weighed in favor of exercising jurisdiction. *Id.*; *see also Grange*, 565 F. Supp. 2d at 789. Similarly, in *United Specialty*, the Sixth Circuit found this factor to weigh in favor of exercising jurisdiction because a comparison of the state court complaint and the federal declaratory judgment complaint revealed "no as-yet-unresolved factual issues [in the state court case] that stand between [the] federal court and its informed resolution of the coverage question." 936 F.3d at 400; *see also Wilcoxson v. Principal Life Ins. Co.*, 1:23-CV-00111-GNS-HBB, 2024 WL 1776390, at *4 (W.D. Ky. April 24, 2024) ("In cases seeking a declaration regarding 'the scope of insurance coverage,' the Sixth Circuit has 'recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings.'" (quoting *Flowers*, 513 F.3d at 560)). On the other hand, if the declaratory judgment action is dependent on factual findings that will be made by the state court or on an unresolved question

of state law, this subfactor weighs against exercising jurisdiction. *See Massachusetts Bay*, 759 F. App'x at 439– 440; *Bituminous*, 373 F.3d at 815; *Travelers*, 495 F.3d at 272.

The defendants argue that, in order to resolve the coverage issues in this case, the Court must make factual findings that may conflict with the state court's factual findings, and, even if the courts make identical factual findings, the parties will still have been forced to engage in litigation on two fronts. [R. 8-1, p. 8]. In response, Crestbrook insists that "the legal issues relevant to the coverage determination are distinct from the factual and legal issues as to liability and damages involved in the state court tort action." [R. 10, p. 9]. But beyond this conclusory statement, Crestbrook does not provide any explanation of how the coverage issues in this federal action are unrelated to the factual and legal issues in the state court matter.

As the Court has already explained, the duty to defend may be determined without factual findings, but the duty to indemnify will require resolution of certain disputed facts. For example, the Court must consider whether Jane Doe's injuries were caused intentionally or at the direction of Rodney Hatfield, an issue which in turn requires the Court to determine whether Rodney Hatfield knew or ought to have known that Jane Doe's injuries were likely to result from his conduct. *See* [R. 17-1, p. 43 (the Intentional Acts Exclusion)]. Similarly, to determine if the Criminal Acts Exclusion applies, the Court must determine Rodney Hatfield's relevant acts or omissions and whether they were criminal in nature. *See id.* And to determine whether the Personal Excess Liability Policy provides coverage, the Court must determine whether Jane Doe's injuries resulted from "[a]ny criminal, willful, fraudulent, dishonest, intentional or malicious act or omission by any person," and whether her injuries were caused by "acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, Property Damage, or Bodily Injury."  [R. 17-2, p. 34].

These same issues are before the state court, both through the Third-Party Complaint and through Jane Doe's claims against the Hatfield Defendants. As such, this declaratory judgment action is dependent on the factual findings of the state court, and this case does not involve "separate and distinct issues from the liability issues litigated in [Jefferson] Circuit Court." *Frankenmuth*, 510 F.Supp.3d at 496; *see also White Pine*, 2022 WL 2512771, at *12 (ruling similarly). This first subfactor therefore weighs against exercising jurisdiction.

### ii. Subfactor 2

This second subfactor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Typically, this subfactor weighs in favor of exercising jurisdiction "when the state law is clear and when the state court is not considering the issues." *Id.* For example, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454); *see also Cardinal Health*, 29 F.4th at 799 ("If 'the state law is clear and . . . the state court is not considering the issues,' this subfactor has less force." (quoting *Flowers*, 513 F.3d at 560)). However, when the declaratory action involves novel issues of state law, it usually weighs against jurisdiction because "[w]e generally consider state courts to be in a better position to evaluate novel questions of state law." *Bituminous*, 373 F.3d at 814 (citing *Travelers*, 495 F.3d at 272). However, "novelty is not the only concern." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4 (holding that while the state-law questions were not particularly novel, "this case involves only questions of state law . . . indicat[ing] the possibility of friction with the state court"). In some cases, the Sixth Circuit has placed greater emphasis on the state court's superior ability to resolve questions of

state law, "without immediately pointing to the novelty of the state law issues." *Id.* (citing *Bituminous*, 373 F.3d at 815).

With respect to this second subfactor, the defendants argue that the insurance policy interpretation issues in this case present questions of state law, and "there are issues of state law that may be commingled with the facts pertaining to the allegations set forth in the State Court Action." [R. 8-1, p. 8]. In response, Crestbrook does not deny that the coverage issues are presently before the state court, but it insists that those issues have "already been addressed at length by Kentucky law," such that this second subfactor weighs against exercising jurisdiction. [R. 10, p. 10]. Nevertheless, Crestbrook states, "Even considering the general presumption that state courts are in a better position to decide state law, this subfactor is at best neutral." *Id.*

In considering these arguments, the Court notes that neither party has identified any novel issues of state law. Regardless, as this Court has explained in other cases involving *Grand Trunk* analyses, "novelty is not the only concern." *Frankenmuth*, 510 F.Supp.3d at 497 (quoting *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4) (internal quotation marks omitted); *see also General Star*, 2023 WL 3956150, at *17. Much like the present case, those cases presented questions of state, not federal law. *See Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at *17. This Court explained that, "novel or not," the state law issue could be resolved by the state court, which had a "superior ability to apply its own law." *Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at *17; *see also Grange*, 565 F. Supp. 2d at 790 ("Since this is an insurance action, the state court is better situated to decide the issue, weighing against jurisdiction."). The Court found that this weighed against the exercise of jurisdiction. *Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at *17.

In this case, the coverage issues, which involve questions of state law, are squarely before the state court. And as the Court has already explained, facts relevant to those coverage issues will necessarily be determined by the state court, which will have a more complete picture of the facts before it. As a result, the Court finds that the state court is in a better position to determine the issues of fact and law raised by this declaratory action. This second subfactor therefore weighs against exercising jurisdiction. *See White Pine Ins. Co.*, 2022 WL 2512771, at *12 (noting that the issue of insurance coverage was already before the state court via a bad faith claim, a fact which weighed against exercising jurisdiction); *see also Flowers*, 513 F.3d at 560 ("[W]hen an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" (quoting *Northland*, 327 F.3d at 454)).

### iii.  Subfactor 3

Under the third subfactor, the Court must consider "whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Bituminous*, 373 F.3d at 814–15 (citing *Roumph*, 211 F.3d at 968).  In other words, this subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. For example, in cases involving insurance contract interpretation issues, the Sixth Circuit has held that such issues are generally "questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Id.* (quoting *Travelers*, 495 F.3d at 273) (internal quotation marks omitted). This is true because "[t]he states regulate insurance companies for the

protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815) (internal quotation marks omitted); *but see Northland*, 327 F.3d at 454 (finding that the Court's exercise of jurisdiction would not create friction between the state and federal courts).

In the present case, the defendants argue, albeit with little explanation, that "there is a close nexus between the underlying factual and legal issues and state law and/or public policy." [R. 8-1, p. 8]. In response, Crestbrook "concedes that this subfactor weighs against exercising jurisdiction." [R. 10, p. 11].

The Court agrees and finds that "this federal lawsuit implicates state policy that could be frustrated by the Court's exercise of jurisdiction." *General Star*, 2023 WL 3956150, at *18 (citing *Frankenmuth*, 510 F.Supp.3d at 497). The Sixth Circuit has made clear that "[i]nterpretation of Kentucky insurance contracts is guided by state public policy. Despite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case." *Flowers*, 513 F.3d at 561. This Court agrees with that analysis. *See, e.g.*, *Frankenmuth*, 510 F.Supp.3d at 497. Furthermore, the Sixth Circuit recently endorsed that same analysis in *United Specialty*, holding that "even in cases where state law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely entwined with state public policy." 936 F.3d at 401. The nexus between the legal issues in this case, which relate to the interpretation of two related insurance policies, and state policy is clear. "Relatedly, the *lack* of nexus between the state law issues presented and the federal forum is obvious—'[n]o federal-law questions are involved in the coverage issue' before the Court." *Frankenmuth*, 510 F.Supp.3d at 498 (quoting *United Specialty*, 936 F.3d at 401); *see also Cardinal Health*, 29 F.4th

at 800 (explaining that in cases where "there are 'no federal laws . . . at issue,' this subfactor 'weighs against exercising jurisdiction'" (quoting *Massachusetts Bay*, 759 F. App'x at 440); *Massachusetts Bay*, 759 F. App'x at 440 ("[N]o federal laws are at issue. This . . . weighs against exercising jurisdiction."). Simply put, "[t]his case does not turn on federal law, but rather Kentucky's interpretation of its insurance contracts—state law that is 'guided by state public policy.'" *Frankenmuth*, 510 F.Supp.3d at 498 (quoting *Flowers*, 513 F.3d at 561); *see also General Star*, 2023 WL 3956150, at *18. This subfactor therefore weighs strongly against exercising jurisdiction.

In sum, each of the three subfactors weigh against exercising jurisdiction, and the fourth *Grand Trunk* factor therefore weighs against exercising jurisdiction.

### E. Factor Five

Under the final *Grand Trunk* factor, the Court must consider "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. In many cases involving similar insurance coverage issues, the Sixth Circuit has held that an alternative remedy is available through a declaratory judgment under state law or an indemnity action in the state court at the conclusion of the liability proceedings. *See, e.g.*, *United Specialty*, 936 F.3d at 401–01; *Massachusetts Bay*, 759 Fed. App'x at 441–42; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 816–17; *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462–63 (6th Cir. 1986). In those cases, the Court noted that the coverage issues involved questions of state law; they did not require application of federal common or statutory law. However, the Sixth Circuit has also acknowledged that "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Flowers*, 513 F.3d at 562; *see also Penn-Star Ins. Co. v. Aral, Inc.*, 2:23-166-DCR, 2024 WL 992480, *3 (E.D.

Ky. Mar. 7, 2024) (acknowledging that insurers may seek declaratory judgments in state court or file indemnity actions, "[b]ut the availability of such alternatives does not necessarily make them *better* or *more effective* than federal declaratory actions"); *White Pine Ins. Co.*, 2022 WL 2512771, at *14 (reciting similar language). On this issue, Sixth Circuit "precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Flowers*, 513 F.3d at 562 (citations omitted); *see also Cardinal Health*, 29 F.4th at 801 (noting that "[o]ur precedent is 'somewhat inconsistent' with respect to the fifth factor" (quoting *Massachusetts Bay*, 759 F. App'x at 441)).

The Sixth Circuit provided some clarification on this issue in *Flowers*. In that case, the Sixth Circuit explained that, "rather than applying a general rule," the inquiry on this fifth factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562. There, the insurer sought a declaratory judgment that it had no duty to indemnify a therapist employed by the insured, a mental health services provider, in a state emotional distress suit stemming from the therapist's sexual affair with a patient. *Id.* at 550–51. The Court noted that, under those circumstances, a state declaratory action would have been better than federal declaratory action "[i]n many ways." *Id.* For example, "Kentucky courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment." *Id.* at 562. The Kentucky courts would also have been able to combine the two actions, thereby allowing a single judge to resolve all issues. *Id.* However, the Sixth Circuit also acknowledged that Kentucky law provided clear guidance on this issue, so a federal declaratory action was not "clearly inferior." *Id.*

On the other hand, an indemnity action would *not* have been a superior remedy, because the insurer had attempted to join the state court action but had been prevented from doing so. *Id.* Even if the insurer joined the state court action, it would be required to wait until the liability issues were resolved before determining its obligations to the therapist. *Id.* "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.* More recently, however, the Sixth Circuit upheld the district court's determination that this factor weighed against exercising jurisdiction because a state court declaratory judgment action "would provide [the insurance company] with the same remedy it seeks in federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401.

In the present case, the defendants argue that "Crestbrook can assert its rights in the same court deciding the State Court Action," through a declaratory action or an indemnity action. [R. 8-1, p. 9]. The defendants also note that the third-party complaint remains pending in state court. *Id.* In response, Crestbrook argues that "Defendants should not be allowed to use the pending Third Party Complaint as a trump card by virtue of having filed it prior to their Motion to Dismiss." [R. 10, p. 11]. Instead, Crestbrook argues, it is "better to resolve the coverage issues separately from the liability and tort issues." *Id.* By way of explanation, Crestbrook cites to its belated involvement in the state court discovery process, which may necessitate the retaking of some parties' depositions. *Id.* at 11–12.

However, Crestbrook has not addressed the two alternative remedies identified by the defendants: a state court declaratory action and an indemnity action. A state indemnity action at the end of the state court proceeding would, in many cases, be an inferior remedy. *See Flowers*, 513 F.3d at 562 (finding that "[s]uch a delayed alternative would be worse, not better, than

seeking a federal declaratory judgment"); *White Pine Ins. Co.*, 2022 WL 2512771, at *14 (reciting similar language). Indeed, in this case, it would require Crestbrook "to wait until the liability issues are resolved before determining its obligations." *White Pine Ins. Co.*, 2022 WL 2512771, at *14 (citing similar reasons for finding an indemnity action to be an inferior alternative remedy).

On the other hand, a declaratory action in state court is a better option than this federal declaratory action. First, the specific coverage issues before this court involve questions of state law. Even assuming Kentucky law is clear on that issue, and a federal court could "confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on their jurisdiction, *United Specialty*, 936 F.3d at 400, "Kentucky courts remain in a superior position to interpret that state law and apply it to the facts of this case." *Frankenmuth*, 510 F.Supp.3d at 500 (citing *Flowers*, 513 F.3d at 562).

It is clear, then, that a state declaratory action would provide Crestbrook with the same remedy that it seeks from this Court, and moreover, "the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401; *see also Massachusetts Bay*, 759 Fed. App'x at 441 (acknowledging that "Tennessee courts are in a superior position to resolve questions of state law"). Furthermore, a state court could combine the two actions (assuming both actions are filed in the same court), allowing a single judge to resolve all issues and avoiding the potential for confusing scheduling problems, issues with the orderly presentation of facts, and res judicata issues. *See Flowers*, 513 F.3d at 562 ("The Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge."); *Massachusetts Bay*, 759 Fed. App'x at 441 (recognizing that the "Tennessee courts 'might also have been able to combine the two actions so that all issues could

be resolved by the same judge.'" (quoting *Flowers*, 513 F.3d at 562)); *Employers Mutual Casualty Co. v. Clifford*, 5:23-271-KKC, 2024 WL 2221445, at *3 (E.D. Ky. May 15, 2024) ("A declaratory action in Kentucky state court also has the advantage of efficiency, allowing the coverage issue and the underlying state court action to be resolved by the same judge. That would allow the parties to litigate all the issues on one front, rather than two."); *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *5 (citation omitted).

And while Crestbrook argues that its presence in the state court matter "may further complicate matters" because it will be required to engage in discovery and possibly retake depositions, this argument essentially comes down to efficiency. [R. 10, p. 11]. But the Court has already explained the factual overlap between the coverage issues and the state court claims, and it therefore finds that it would be *more* efficient for a single court to manage the discovery and litigation of those issues. Moreover, to the extent Crestbrook's efficiency arguments "boil down to an attempt to make litigation less costly for [itself] by avoiding state-court discovery and coming to a coverage determination more quickly," that "self-serving argument fails to show . . . that the Kentucky court lacks alternative remedies which are better or more effective" or "why the state court is not capable of bifurcating the coverage issues from liability or otherwise ordering discovery in an efficient manner." *White Pine Ins. Co.*, 2022 WL 2512771, at *15 (quoting *Am. Nat'l Prop. & Cas. Co. v. Wilson*, 2019 18-116-DLB-CJS, *7 (Apr. 26, 2019)) (internal quotation marks omitted). Simply put, Crestbrook does not argue—and the Court has no reason to believe—that Crestbrook's interests would not be adequately protected in a state court declaratory action or that the state court is not in a position to "define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816–17 (quoting *Am. Hom Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)).

For these reasons, the Court finds that a declaratory action in state court is a better remedy than this federal declaratory action, and this fifth factor therefore weighs heavily against accepting jurisdiction. *See Cardinal Health*, 29 F.4th at 801 (finding that district court did not abuse its discretion in deciding that this factor weighs against jurisdiction "given the availability of [a state court] declaratory action and the fact that the case involves solely state law issues" (citations omitted); *Frankenmuth*, 510 F.Supp.3d at 498–501 (similarly finding that the fifth factor weighs heavily against exercising jurisdiction where the insurance company could pursue the same declaratory relief in the state court); *General Star*, 2023 WL 3956150, at *18–19 (same); *but see Penn-Star Ins. Co.*, 2024 WL 992480, at *4 (finding that "judicial efficiency counsels against exercising jurisdiction" but "does not weigh so heavily as to tip the scales one way or the other overall").

### F. Balancing the Factors

The Sixth Circuit has never articulated the relative weight of each *Grand Trunk* factor, acknowledging instead that the factors are not always equal. *Flowers*, 513 F.3d at 563; *Cardinal Health*, 29 F.4th at 797; *Admiral* at *2. This Court has explained, however, that "[t]he most important consideration in exercising this discretion [under the Declaratory Judgment Act] is whether retaining jurisdiction interferes with state-court litigation." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *2. The Sixth Circuit has also indicated that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on [the] facts of the case." *Hoey*, 773 F.3d at 759; *Admiral*, at *2. In other words, the Court must balance the five *Grand Trunk* factors on a case-by-case basis. When balancing these five factors, the Court is afforded "unique and substantial" discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

In this case, the second *Grand Trunk* factor is at best neutral, the third factor is also neutral and is afforded little weight, and the remaining three factors each weigh in favor of declining jurisdiction. Moreover, "considerations of efficiency, fairness, and federalism," *Hoey*, 773 F.3d at 759, also weigh against exercising jurisdiction. First, the parties are already litigating claims (regarding both tort liability and insurance coverage) in the state court. If the Court accepts jurisdiction, it forces the parties to engage in litigation on two fronts "to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with Kentucky insurance law in the first place." *Grange*, 565 F. Supp. 2d at 791. In fact, the state court "is positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front." *Id.* Furthermore, an ongoing federal declaratory action could certainly create delays in the state court proceeding, or confusion as to scheduling, discovery, and other matters. It would also deprive a state court of the opportunity to interpret and apply its own law. Moreover, since the issue here is not one of federal law but rather of state-regulated insurance contracts, an issue which this Court has no special interest, this Court is not a superior forum. By declining to exercise its substantial discretion to hear the case, this Court does not "rob" the insurance company of anything. *See id.* at 791–92. Indeed, Crestbrook has an adequate (perhaps even superior) remedy via a state court declaratory judgment action, where it is already a party. *Id.* at 792.

Lastly, the Court notes that it should not exercise jurisdiction under the Declaratory Judgment Act "unless it serves a useful, practical purpose." *Id.* (quoting *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). "[I]f our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Id.* at 785 (citations omitted). Accordingly, for the reasons set

- 34 -

forth above, the Court finds that the *Grand Trunk* factors, when considered together and balanced against considerations of efficiency, fairness, and federalism, weigh heavily against the exercise of jurisdiction. *See Frankenmuth*, 510 F.Supp.3d at 498 (balancing the *Grand Trunk* factors similarly and declining jurisdiction even where some factors weighed in favor of accepting it); *White Pine Ins. Co.*, 2022 WL 2512771, at *15 (balancing the factors and declining jurisdiction, citing similar concerns); *General Star*, 2023 WL 3956150, at *19–20 (same).

### III. CONCLUSION

As set forth above, under the facts of this case, three of the five *Grand Trunk* factors weigh against accepting jurisdiction, one factor is neutral at best,[9] and the remaining factor is neutral and afforded little weight. Having balanced these five factors with "underlying considerations of efficiency, fairness, and federalism," and, considering the unique facts of this case, the Court will exercise its broad discretion to decline jurisdiction over this matter under the Declaratory Judgment Act. *See Wilton*, 515 U.S. at 286 (recognizing that district courts are afforded "unique and substantial" discretion under the Declaratory Judgment Act).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendant Jane Doe's Motion to Adopt and Join the Hatfield Defendant's Motion to Dismiss, [**R. 14**], is **GRANTED**.

2. The Motion to Dismiss filed by Defendants Rodney Hatfield and Capital Holdings 181, LLC, [**R. 8**], is **GRANTED**.

---

[9] Moreover, even if the second factor weighed in favor of exercising jurisdiction, the Court finds that it would only weigh *slightly* in favor of jurisdiction, given the concerns already outlined by the Court. *See supra* Section II(B). Balanced together, the other factors would still weigh in favor of declining jurisdiction.

3.  The Court declines to exercise its discretion under the Declaratory Judgment Act, 28

U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**. The

Clerk of Court **SHALL STRIKE** this case from the Court's active docket.

This the 14th day of November, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY